NORMAN J. LEVASSEUR, Plaintiff-Appellee v. BILLY JOE LOWERY, Defendant,
BEAM ELECTRIC CO., INC., Intervenor-Appellant KEY RISK MANAGEMENT
SERVICES INC., Intervenor-Appellant

No. COA99-598

(Filed 1 August 2000)

### 1. Jurisdiction— automobile accident—workers' compensa- tion lien—underinsured motorist coverage—subrogation

The trial court did not err in assuming jurisdiction under
N.C.G.S. § 97-10.2(j) to determine the amount of an employer's
workers' compensation lien in an action where plaintiff-employee
was injured in an automobile accident in the course of his
employment while driving a company vehicle, because: (1) the
unnamed defendant underinsured motorist carrier is a third party
based on plaintiff's injury being caused under circumstances cre-
ating a liability in some person to pay damages therefor, N.C.G.S.
§ 97-10.2(a); (2) the trial judge is given jurisdiction where the
judgment is insufficient to compensate the subrogation claim of
the workers' compensation carrier or where a settlement has
been agreed upon by the employee and the third party; (3) the set-
tlement agreement reached by plaintiff and the third party in the
instant case gave the trial court jurisdiction; and (4) even though
the Industrial Commission assumed jurisdiction over disburse-
ment of the $25,000 recovery, the trial court is not precluded from
assuming jurisdiction as a result of the settlement reached
between plaintiff and the third party.

### 2. Insurance— automobile—underinsured motorist policy— subrogation—workers' compensation lien

The trial court erred by concluding intervenor-employer did
not have a lien on plaintiff-employee's settlement with the
employer's underinsured motorist (UIM) carrier in an action
where plaintiff-employee was injured in an automobile accident
in the course of his employment while driving a company vehicle,
because: (1) the settlement merely allowed the insurance carrier
to reduce the arbitration award by the amount of the employer's
workers' compensation lien; (2) the issue of whether the
employer was entitled to a workers' compensation lien on the
UIM proceeds in addition to the insurance carrier reducing
the UIM proceeds by the lien amount was irrelevant to the settle-
ment; and (3) once the lien was established, the trial court abused

LEVASSEUR v. LOWERY

[139 N.C. App. 235 (2000)]

its discretion by stating it was eliminating the lien in order to prevent an injustice, based on the trial court's failure to make a reasoned choice and enter findings and conclusions which could provide for meaningful review on appeal as required by N.C.G.S. § 97-10.2(j).

**3. Costs— attorney fees—contingent fee agreement**

The trial court did not abuse its discretion by approving the contingent fee agreement between plaintiff and his attorneys for one-third of plaintiff's recovery in an action where plaintiff-employee was injured in an automobile accident in the course of his employment while driving a company vehicle, because N.C.G.S. § 97-10.2(f)(1) provides that the attorney fees can be up to one-third of the amount obtained or recovered.

Judge GREENE concurring in part and dissenting in part.

Appeal by intervenors from order entered 15 January 1999 by Judge Jesse B. Caldwell, III, in Gaston County Superior Court. Heard in the Court of Appeals 22 February 2000.

*Arthurs & Foltz, by Nancy E. Foltz and Douglas P. Arthurs, for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, a Professional Limited Liability Company, by Clayton M. Custer and Laura M. Wolfe, for intervenors-appellants.*

WALKER, Judge.

Plaintiff, an employee of appellant Beam Electric Co., Inc. (Beam), was injured in an automobile accident in the course of his employment. Defendant Lowery, the negligent third party, was covered by a liability automobile insurance policy in the amount of $25,000.00, issued by State Farm Mutual Automobile Insurance Company (State Farm). At the time of the accident, plaintiff was operating a vehicle owned by Beam which was insured by an underinsured motorist (UIM) policy from Travelers Insurance Companies (Travelers), with policy limits of $1,000,000.00. Appellant Key Risk Management Services, Inc. (Key Risk) administers Beam's workers' compensation claims.

As a result of plaintiff's injuries, Beam paid $92,723.45 in medical expenses, $5,754.93 in rehabilitation expenses, and $92,625.58 in indemnity benefits, for a total workers' compensation lien of

$191,103.96, as it appeared on Form 28B dated 9 December 1998. Plaintiff received $65,000.00 in workers' compensation benefits for his permanent partial disability ratings from the injuries. Additionally, plaintiff's attorney was awarded a fee of $16,250.00 from the Industrial Commission (Commission) based on the $65,000.00 benefit payment.

On 1 July 1997, plaintiff filed suit against defendant Lowery and unnamed defendant Travelers. Prior to the filing of the lawsuit, State Farm tendered its policy limits of $25,000.00. The $25,000.00 was then advanced by Travelers to protect its subrogation rights under N.C. Gen. Stat. § 20-279.21(b)(4). Pursuant to N.C. Gen. Stat. § 97-10.2, Beam gave notice of appearance and notice of lien to the trial court on 17 October 1997. The Commission distributed the $25,000.00 recovery one-third ($8,333.33) to plaintiff, one-third to Beam, and one-third to plaintiff's counsel for attorney fees.

On 11 March 1998, plaintiff moved the case against Travelers to binding arbitration. Plaintiff and Travelers agreed that the arbitrators would not decide:

> the issue of what amount is recoverable under the UIM policy issued by Travelers because they will not decide any offsets for credits for payment by any liability carrier and any offsets for any credit for payments by the carrier pursuant to any workers' compensation claim [plaintiff] has made, or the limits of the UIM policy, if any.

Instead, the issue of damages was limited to "what amount is the plaintiff entitled to recover as damages for his personal injuries from Travelers?" The arbitration resulted in an award of $625,000.00 to plaintiff.

Thereafter, Travelers took the position that no UIM proceeds were payable to plaintiff until his workers' compensation claim was "closed." On 29 September 1998, plaintiff moved, in the underlying action (97 CVS 2452), for a judgment on the arbitration award and to extinguish Beam's workers' compensation lien.

On 29 December 1998, prior to a hearing on plaintiff's motion, plaintiff and Travelers entered into an agreement whereby Travelers would reduce its payment of the arbitration award by the amount of Beam's workers' compensation lien, receive credit for the $25,000.00 recovery from State Farm, and make a net payment of $450,000.00 to

plaintiff in full payment of the arbitration award. The parties determined Beam's lien to be $185,349.03, as opposed to the $191,103.96 appearing on the Form 28B. All the parties, including Beam, stipulated that plaintiff, Travelers and State Farm "resolved all matters and things in dispute between them" through this agreement.

On 15 January 1999, the trial court ordered that (1) Beam's workers' compensation lien did not attach to the proceeds from plaintiff's agreement with Travelers; and alternatively, (2) the trial court extinguished the lien in its discretion in the event it was later determined that Beam did have a lien on the plaintiff's settlement proceeds.

Recently, in *Liberty Mut. Ins. Co. v. Ditillo*, 348 N.C. 247, 253, 499 S.E.2d 764, 768 (1998), our Supreme Court specifically declined to decide whether a workers' compensation carrier has a right under N.C. Gen. Stat. § 97-10.2 to a lien on uninsured motorist (UM) benefits paid to an employee in a case where the UM coverage limits exceed the amount of workers' compensation benefits. We are now presented with a case where the UIM benefits paid to an employee exceed the amount of workers' compensation benefits.

**[1]** Beam first argues that the trial court lacked jurisdiction to determine the amount of the workers' compensation lien and distribute the third party recovery under N.C. Gen. Stat. § 97-10.2(j).

To determine whether the trial court had jurisdiction under N.C. Gen. Stat. § 97-10.2(j), we first consider whether Travelers is a "third party" within the meaning of N.C. Gen. Stat. § 97-10.2. Under the statute, "third party" is defined as follows:

> The right to compensation and other benefits . . . shall not be affected by the fact that the injury . . . was caused *under circumstances creating a liability in some person other than the employer to pay damages therefor*, such person hereinafter being referred to as the "third party."

N.C. Gen. Stat. § 97-10.2(a) (Cum. Supp. 1998) (emphasis added).

In *Creed v. R.G. Swaim and Son, Inc.*, 123 N.C. App. 124, 128-29, 472 S.E.2d 213, 216 (1996), this Court held that, under N.C. Gen. Stat. § 97-10.2, payments made by the UIM carrier as well as the tort-feasor are from a "third party," and that the workers' compensation carrier "has a lien on the proceeds of plaintiff's underinsured motorist policy" under the statute.

LEVASSEUR v. LOWERY

[139 N.C. App. 235 (2000)]

Here, the policy states that Travelers will pay all sums the plaintiff is "legally entitled to recover as damages from" the underinsured motorist. This Court has held that an action under a UIM policy is based on the tort of the other motorist and that UIM coverage is a type of liability coverage. *See Ensley v. Nationwide Mut. Ins. Co.*, 80 N.C. App. 512, 515, 342 S.E.2d 567, 569, *cert. denied*, 318 N.C. 414, 349 S.E.2d 594 (1986) (stating the UIM carrier "assumed . . . the liability of the uninsured motorist for damages which the plaintiff is legally entitled to recover from the uninsured motorist"). Traveler's liability to plaintiff, while derivative, exists by reason of defendant Lowery's negligence. *See Baxley v. Nationwide Mutual Ins. Co.*, 104 N.C. App. 419, 424, 410 S.E.2d 12, 15 (1991), *affirmed*, 334 N.C. 1, 430 S.E.2d 895 (1993) (holding that an action under a UIM policy is "actually one for the tort allegedly committed by the [underinsured] motorist") (citations omitted). Therefore, Travelers is a "third party" in that plaintiff's injury was "caused under circumstances creating a liability in some person . . . to pay damages therefor." N.C. Gen. Stat. § 97-10.2(a).

N.C. Gen. Stat. § 97-10.2(j) establishes when the superior court is given jurisdiction. The statute, as in effect at the time of the present case, provides in part:

Notwithstanding any other subsection in this section, in the event that a judgment is obtained which is insufficient to compensate the subrogation claim of the Workers' Compensation Insurance Carrier, or in the event that a settlement has been agreed upon by the employee and the third party, either party may apply to the resident superior court . . . to determine the subrogation amount.

N.C. Gen. Stat. § 97-10.2(j) (1998)[1]. Accordingly, there are two instances whereby the trial court is given jurisdiction: (1) where the judgment is insufficient to compensate the subrogation claim of the workers' compensation carrier, or (2) where a settlement has been agreed upon by the employee and the third party.

Beam contends the trial court erred in assuming jurisdiction since the agreement between plaintiff and Travelers was not a valid "settlement" as recognized by the statute, but merely an attempt to circumvent it.

---

1. Effective 18 June 1999, N.C. Gen. Stat. § 97-10.2(j), Session Laws 1999-194, s. 1, among other changes, substituted "by the employee in an action against a third party" for "which is insufficient to compensate the subrogation claim of the Workers' Compensation Insurance Carrier."

The trial court found in part:

16. The plaintiff, Travelers and the defendant have resolved all issues in dispute among them concerning the payment of the arbitration award, issues of setoff under the Travelers policy for workers' compensation benefits paid, pre- and post-judgment interest, and all other issues, by way of an Agreement dated December 29, 1998. Said Agreement is part of the record of this case.

17. The settlement agreement provides that Travelers, pursuant to the language of its policy and recent North Carolina Supreme Court cases interpreting that policy language, is entitled to a setoff or credit for amounts paid to the plaintiff by workers' compensation . . . .

The parties to the agreement do not contest its validity. We agree with the trial court's findings and conclusion that the settlement agreement reached by the plaintiff and the third party gave the trial court jurisdiction.

Beam also argues that since plaintiff agreed to invoke the jurisdiction of the Commission for the interim disbursement of the $25,000.00 recovery, the Commission had exclusive jurisdiction. Beam cites *Buckner v. City of Asheville*, 113 N.C. App. 354, 438 S.E.2d 467, *disc. review denied*, 336 N.C. 602, 447 S.E.2d 385 (1994), for the proposition that once the request for disbursement is submitted to the Commission, the superior court no longer has jurisdiction.

In *Buckner*, the plaintiff-employee, while in the course of his employment, was injured in an automobile accident by a tortfeasor. The employer provided UIM coverage for the employee. The employee, employer, and tortfeasor executed a consent judgment and submitted the matter to the superior court for disbursement. *Id.* at 356-57, 438 S.E.2d at 468. To give the superior court jurisdiction, N.C. Gen. Stat. § 97-10.2(j), as in effect at that time, required that the employee-third party settlement be entered when the "action [was] pending on a trial calendar and the pretrial conference with the judge ha[d] been held." Since there was no evidence that the settlement occurred at such a time, this Court held that the superior court did not have jurisdiction and exclusive jurisdiction was therefore assumed by the Commission. *Id.* at 360, 438 S.E.2d at 470.

Under N.C. Gen. Stat. § 97-10.2, the "distribution issue can be decided in some instances by either the Commission or the trial court, with 'a different standard for disbursement when the case is before the Superior Court than that for cases before the Industrial Commission.'" *Id.* at 359, 438 S.E.2d at 470 (*quoting Pollard v. Smith*, 90 N.C. App. 585, 588, 369 S.E.2d 84, 86 (1988), *reversed on other grounds*, 324 N.C. 424, 378 S.E.2d 771 (1989)).

Here, even though the Commission assumed jurisdiction over disbursement of the $25,000.00 recovery, this does not preclude the superior court from properly assuming jurisdiction as a result of the settlement reached between plaintiff and Travelers.

[2] Next, Beam argues the trial court erred in concluding it did not have a lien on the plaintiff's settlement with Travelers.

In *McMillian v. N.C. Farm Bureau Mut. Ins. Co.*, 347 N.C. 560, 565, 495 S.E.2d 352, 354-55 (1998), our Supreme Court held that UM carriers are entitled under N.C. Gen. Stat. § 20-279.21(e)[2] to reduce coverage by the amount of workers' compensation benefits received by the employee. The plaintiff in *McMillian* filed a declaratory judgment action to determine the coverage available under a UM policy and a policy which provided UM and UIM coverage. The *McMillian* court held that "UM carriers are entitled to reduce coverage ... by the amount of workers' compensation ... already received." *Id.* In so holding, the *McMillian* court rejected the analysis of *Ohio Casualty Group v. Owens*, 99 N.C. App. 131, 392 S.E.2d 647, *disc. review denied*, 327 N.C. 484, 396 S.E.2d 614 (1990), which focused on the entity who provided the UM/UIM policies. *See Liberty Mutual*, 348 N.C. at 252, 499 S.E.2d at 767 (noting that *McMillian* overruled *Ohio Casualty* "in part").

However, the *Ohio Casualty* Court also interpreted N.C. Gen. Stat. § 97-10.2, and stated that:

2. The 1999 amendment to N.C. Gen. Stat. § 20-279.21(e), entitled "An act to clarify that liability, uninsured, and underinsured coverage is not reduced by receipt of subrogated Workers' Compensation benefits," specifically references the workers' compensation lien of N.C. Gen. Stat. § 97-10.2 and states in part that the UIM carrier "shall insure that portion of a loss uncompensated by any workers' compensation law and the amount of an employer's lien determined pursuant to G.S. 97-10.2(h) or (j)." N.C. Gen. Stat. § 20-279.21(e) (1999). Under the rewritten G.S. § 20-279.21(e), which presumes that a workers' compensation lien attaches to UM/UIM proceeds, the potential for a double recovery by the insured is eliminated. However, the rewritten § 20-279.21(e) does not establish the priority in which the amounts are to be satisfied in the event the policy limits are insufficient to cover both the insured's loss and the employer's lien.

N.C. Gen. Stat. § 97-10.2 provides for the subrogation of the workers' compensation insurance carrier . . . to the employer's right, upon reimbursement of the employee, to any payment, *including uninsured/underinsured motorist proceeds*, made to the employee by or on behalf of a third party as a result of the employee's injury.

*Ohio Casualty*, 99 N.C. App. at 134, 392 S.E.2d at 649 (emphasis added).

Additionally, this Court in *McMillian*, 125 N.C. App. 247, 254, 480 S.E.2d 437, 441 (1997), interpreted N.C. Gen. Stat. § 97-10.2 such that:

the workers' compensation insurance carrier . . . is entitled to be subrogated, upon reimbursement of the employee, to any payment, including UM/UIM motorist insurance proceeds, made to the employee by or on behalf of a third party as a result of the employee's injury.

These constructions of N.C. Gen. Stat. § 97-10.2 by this Court were not addressed by our Supreme Court in *McMillian*. Accordingly, pursuant to N.C. Gen. Stat. § 97-10.2, *McMillian*, and *Ohio Casualty*, Beam's workers' compensation lien attached to plaintiff's settlement proceeds from Travelers.

Plaintiff argues that his UIM benefits have already been reduced by the amount of the lien and to now allow Beam's lien would result in a double penalty.

Plaintiff and Travelers reached a settlement as to the amount of UIM proceeds to which plaintiff was entitled. Travelers did not reduce its liability by operation of its policy provisions or the law. Rather, plaintiff's settlement with Travelers allowed the insurance carrier to reduce the arbitration award by the amount of the employer's workers' compensation lien. Since plaintiff and Travelers settled, the issue of whether Beam was entitled to a workers' compensation lien on the UIM proceeds in addition to Travelers reducing the UIM proceeds by the lien amount is irrelevant. Plaintiff cannot now contend that his private settlement with Travelers operated to extinguish his employer's workers' compensation lien.

Next, Beam contends that the trial court abused its discretion in eliminating the lien. Under N.C. Gen. Stat. § 97-10.2(j), the "judge shall determine, in his discretion, the amount, if any, of the

employer's lien . . . ."[3] However, this Court has held that "the power given the trial court in N.C. Gen. Stat. § 97-10.2(j) is not unbridled or unlimited," rather:

> the trial court is to make a reasoned choice, a judicial value judgment, which is factually supported. We hold that the trial court, in considering a request for disbursement under subsection (j), must enter an order with findings of fact and conclusions of law sufficient to provide for meaningful appellate review.

*Allen v. Rupard,* 100 N.C. App. 490, 495 S.E.2d 330, 333 (1990) (citations omitted).

The trial court made findings concerning the extent of plaintiff's injuries. The trial court concluded Beam did not have a lien on plaintiff's settlement but that if Beam were later determined to have a lien, then the trial court, in its discretion, eliminated the lien to prevent an injustice.

The findings and conclusions of the trial court do not comport with the requirements set forth in *Allen*, supra. Once the lien is established and the trial court considers a request for disbursement, it must make a reasoned choice, a judicial value judgment and enter findings and conclusions which can provide for meaningful review on appeal.

**[3]** Finally, Beam argues the trial court erred in awarding an unreasonable attorney fee to plaintiff, which was one-third of plaintiff's recovery from Travelers.

Plaintiff and his attorneys entered a contingent fee agreement which provided that the attorney fee would be one-third of the amount recovered after suit was filed plus costs. N.C. Gen. Stat. § 97-10.2(f)(1) requires the Commission to disburse monies as prioritized in the statute and provides for the attorney fee "not [to]

---

3. Effective 18 June 1999, and applicable to judgments or settlements entered against third parties on or after that date pursuant to N.C. Gen. Stat. § 97-10.2, subsection (j) now requires the judge to:

> consider the anticipated amount of prospective compensation the employer or workers' compensation carrier is likely to pay to the employee in the future, the net recovery to plaintiff, the likelihood of the plaintiff prevailing at trial or on appeal, the need for finality in the litigation, and any other factors the court deems just and reasonable, in determining the appropriate amount of the employer's lien.

N.C. Gen. Stat. § 97-10.2(j) (1999).

exceed one third of the amount obtained or recovered of the third party." While the trial court is not boundby this subsection, it supports the trial court's approval of the contingency fee agreement. Accordingly, we find no abuse of discretion in the trial court's approval of the attorney fee agreement.

In sum, Travelers is a "third party" within the meaning of N.C. Gen. Stat. § 97-10.2 and the trial court properly assumed jurisdiction of the matter pursuant to N.C. Gen. Stat. § 97-10.2(j). The trial court did not err in approving the fee agreement between plaintiff and his attorneys. The trial court erred in concluding that Beam did not have a lien on the UIM benefits recovered by plaintiff from Travelers, and we remand this case for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

Judge TIMMONS-GOODSON concurs.

Judge GREENE concurs in part and dissents in part.

Judge GREENE concurring in part and dissenting in part.

I do not agree Beam's workers' compensation lien attached to plaintiff's settlement proceeds from Travelers.

This case presents for the first time the issue of whether a workers' compensation carrier/employer is entitled to a lien on the employee/plaintiff's personal injury proceeds received from a UIM carrier, when the UIM carrier has been given a credit in the amount of the payments made by the workers' compensation carrier/employer to the insured/employee. Our Supreme Court has held a UIM carrier is entitled to reduce its UIM coverage to its insured by the amount of workers' compensation the insured/employee has already received. *McMillian v. N.C. Farm Bureau Mut. Ins. Co.*, 347 N.C. 560, 565, 495 S.E.2d 352, 354-55 (1998). In so holding, the *McMillian* court overruled this Court's holding in *Ohio Casualty Group v. Owens*, 99 N.C. App. 131, 392 S.E.2d 647 (1990) that the UIM carrier was not entitled to a credit for the workers' compensation payments made to the insured/employee. *McMillan*, 347 N.C. at 565, 495 S.E.2d at 355. The *McMillian* court did not address the question of whether the workers' compensation carrier/employer was also entitled to a lien on the UIM proceeds received by the insured/employee. Accordingly, left undis-

turbed was that portion of the *Ohio Casualty* opinion that the workers' compensation carrier/employer was entitled to a lien on the UIM proceeds received by the insured/employee. *Ohio Casualty,* 99 N.C. App. at 137, 392 S.E.2d at 651.

Beam, plaintiff's employer in this case, argues and the majority agrees *McMillian* and *Ohio Casualty,* when read together, hold the UIM carrier is entitled to a credit for workers' compensation payments made *and* the workers' compensation carrier/employer is entitled to a lien on the proceeds received by the insured/employee. I disagree.

That portion of the *Ohio Casualty* opinion relating to the workers' compensation lien must be read in the context of its holding that the UIM carrier was <u>not</u> entitled to a credit for payments made by the workers' compensation carrier/employer.[4] To allow both a credit to the UIM carrier and a lien to the workers' compensation carrier/employer would penalize the insured/employee and thus deny him the full compensation for his injuries to which he is entitled under the law.[5] Therefore, *McMillian* must be read, in the context of a case where the UIM carrier has previously been given a credit for the workers' compensation payments, to overrule that portion of *Ohio Casualty* providing for a workers' compensation lien on the UIM proceeds received by the insured/employee.[6] Accordingly, because Travelers received a credit for the workers' compensation payments made by Beam in its payment to plaintiff, Beam was not

---

4. The rationale for the *Ohio Casualty* holding is to prevent the insured/employee from recovering twice for the same injury: once from the workers' compensation carrier and once from the UIM carrier. 99 N.C. App. at 137, 392 S.E.2d at 651.

5. For example: employee is injured in the course and scope of his employment by a non-employee underinsured tortfeasor. Employee collects $100,000.00 from his workers' compensation carrier/employer and obtains a $300,000.00 judgment against his UIM carrier. If we allow both the UIM credit and the workers' compensation lien, the insured/employee receives a net of $200,000.00. Utilizing these principles, employee would be better served to refuse any workers' compensation benefits and pursue the UIM carrier, thus, netting him a total of $300,000.00.

6. Even if *McMillian* cannot be read in this manner, so as to contravene the workers' compensation lien provided for in section 97-10.2(f)(1)c, the trial court in its discretion may choose to eliminate the lien when the UIM carrier has been given credit for the workers' compensation payments. N.C.G.S. § 97-10.2(j) (1999). I disagree with the conclusion of the majority that the trial court's decision to waive the lien must include any findings of fact beyond the finding that the UIM carrier had been given a credit for the workers' compensation payments. Thus, as an alternative basis, I would affirm the trial court's alternative basis for its decision to eliminate Beam's workers' compensation lien.

entitled to a lien on the proceeds received by plaintiff from Travelers.[7]

As I fully concur with the majority on the other issues addressed in its opinion, I would affirm the order of the trial court in all respects.

---

7. I reject the suggestion of the majority that plaintiff somehow waived his right to argue Beam is not entitled to a lien because he agreed, in settlement, to reduce the arbitration award by the amount of the workers' compensation payments. At the time of this settlement, our case law was unequivocal in holding the UIM carrier, Travelers, was entitled to a credit for any workers' compensation benefits paid to the insured/employee. Plaintiff, thus, acted in accordance with the well-settled law and cannot now be penalized for that action.